# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

ROBERT M. GLEN,                      )
                Plaintiff,          )
                          )
      v.                             )        **CASE NO. 9:19-cv-23994-CMA**
                          )
AMERICAN AIRLINES, INC.,            )
              Defendant.         )
                          )
                          )
_____     )

## DEFENDANT AMERICAN AIRLINES, INC.'S
## MOTION TO DISMISS THE AMENDED COMPLAINT,
## OR, IN THE ALTERNATIVE, TO TRANSFER VENUE,
## AND SUPPORTING MEMORANDUM OF LAW

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................ ii

REQUEST FOR HEARING ........................................................................ vi

INTRODUCTION .................................................................................... 1

LEGAL STANDARD................................................................................. 2

ARGUMENT .......................................................................................... 3

    I.    Plaintiff's Claim Is Barred By Essential Threshold Requirements Of Standing, Personal Jurisdiction, And Venue........................................... 3

        A.    Plaintiff Lacks Article III Standing............................................. 3

        B.    This Court Lacks Personal Jurisdiction Over American............................ 5

        C.    Venue Is Both Improper In This District And More Convenient Elsewhere. ...... 9

    Ii.    Plaintiff Does Not Satisfy Title III's Preconditions To Suit................................ 10

    Iii.    Plaintiff Does Not Adequately Plead The Mens Rea And Trafficking Elements Of His Claim. ............................................................... 12

        A.    Plaintiff Fails To Plead That American Knowingly And Intentionally Used Or Benefitted From Confiscated Property. ............... 12

        B.    Plaintiff Fails To Plead That American's Booking Service Is Not Incident To Lawful Travel. ......................................................... 14

            1.    Plaintiff Does Not Allege That American's Booking Service Is Not A Travel Service "Incident To Lawful Travel," And It Plainly Is............................................. 14

            2.    Lawful Travel Is Not An Affirmative Defense........................... 15

            3.    *Garcia-Bengochea* And *Havana Docks* Were Wrongly Decided. ...................................................................... 18

            4.    The Face Of The Complaint Shows That The Actions Plaintiff Challenges Were Incident To Lawful Travel. ............... 19

CONCLUSION...................................................................................... 19

CERTIFICATE OF CONFERENCE............................................................ 21

# TABLE OF AUTHORITIES

Page

CASES

*AFL-CIO v. City of Miami*,
637 F.3d 1178 (11th Cir. 2011) ............................................................2

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................2

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*,
137 S. Ct. 1773 (2017)....................................................................7

*City of Rome v. Hotels.com, L.P.*,
549 F. App'x 896 (11th Cir. 2013) ......................................................15

*Garcia-Bengochea v. Carnival Corp.*,
No. 1:19-cv-21725, 2019 WL 4015576 (S.D. Fla. Aug. 26, 2019) ........................18

*Glen v. Club Mediterranee, S.A.*,
365 F. Supp. 2d 1263 (S.D. Fla. 2005) ..................................................4

*Glen v. Club Mediterranee, S.A.*,
450 F.3d 1251 (11th Cir. 2006) ......................................................3, 12

*Glen v. TripAdvisor LLC, et al.*,
No. 1:19-CV-01809-MN (D. Del. filed Dec. 9, 2019) ...................................10

*Havana Docks Corp. v. Carnival Corp.*,
No. 1:19-cv-21724 (S.D. Fla. Aug. 28, 2019) ..........................................18

*Jakobot v. Am. Airlines, Inc.*,
No. 10-61576-CIV, 2011 WL 2457915 (S.D. Fla. June 20, 2011)...........................6

*Koons Buick Pontiac GMC, Inc. v. Nigh*,
543 U.S. 50 (2004)........................................................................17

*LeFrere v. Quezada*,
582 F.3d 1260 (11th Cir. 2009) ..........................................................19

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)....................................................................3, 4

*Manuel v. Convergys Corp.*,
    430 F.3d 1132 (11th Cir. 2005) ...............................................................................10

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife*,
    551 U.S. 644 (2007)...................................................................................................17

*Osgood v. Discount Auto Parts, LLC*,
    981 F. Supp. 2d 1259 (S.D. Fla. 2013) ....................................................................10

*People for the Ethical Treatment of Animals, Inc. v. Miami Seaquarium*,
    189 F. Supp. 3d 1327 (S.D. Fla. 2016) ....................................................................17

*Pioneer Centres Holding Co. Emp. Stock Ownership Plan*
    *& Tr. v. Alerus Fin., N.A.*,
    858 F.3d 1324 (10th Cir. 2017) ...............................................................................16

*Raines v. Byrd*,
    521 U.S. 811 (1997).....................................................................................................3

*Schaffer ex rel. Schaffer v. Weast*,
    546 U.S. 49 (2005).....................................................................................................15

*Sequeira v. Am. Airlines, Inc.*,
    No. 09-22109-CIV, 2010 WL 11505678 (S.D. Fla. Apr. 15, 2010)..........................6

*Simon v. Eastern Kentucky Welfare Rights Org.*,
    426 U.S. 26 (1976)..................................................................................................3, 5

*Spokeo v. Robins*,
    136 S. Ct. 1540 (2016)................................................................................................3

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009).....................................................................................................3

*Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King, & Stevens, P.A.*,
    525 F.3d 1107 (11th Cir. 2008) ..........................................................................16, 18

*United States v. Cotton*,
    535 U.S. 625 (2002)...................................................................................................16

*United States v. Prentiss*,
    256 F.3d 971 (10th Cir. 2001) ..................................................................................16

**STATUTES**

18 U.S.C. § 2721 .................................................................................................16

18 U.S.C. § 2721(a) .............................................................................................18

18 U.S.C. § 2721(b) .............................................................................................18

18 U.S.C. § 2724 .................................................................................................18

22 U.S.C. § 2370(a) .............................................................................................14

22 U.S.C. § 6023(13) .......................................................................................15, 16

22 U.S.C. § 6023(13)(B) .......................................................................................14

22 U.S.C. § 6082(a)(1) .........................................................................................15

22 U.S.C. § 6082(a)(4)(B) .....................................................................................10

28 U.S.C. § 1391(c)(2) ...........................................................................................9

28 U.S.C. § 1404(a) .............................................................................................10

44 U.S.C. § 1507 .................................................................................................19

50 U.S.C. § 4305(b) .............................................................................................14

**OTHER AUTHORITIES**

31 C.F.R. pt. 515 .................................................................................................17

31 C.F.R. § 515.560 .........................................................................................14, 17

31 C.F.R. § 515.572(a)(1) ...................................................................................14, 17

31 C.F.R. § 515.572(a)(1) .....................................................................................19

31 C.F.R. § 515.572(a)(2)(i) ...................................................................................19

31 C.F.R. § 515.572(a) .........................................................................................14

31 C.F.R. § 515.560 .............................................................................................14

H.R. Rep. No. 104-468 (1996) ...............................................................................17

Restatement (Second) of Torts § 927 & cmts. m..............................................................4

**REQUEST FOR HEARING**

This motion raises several important questions about the meaning and application of Title III of the Helms-Burton Act, 22 U.S.C. § 6021 et seq., which provides a cause of action against persons who "traffic[]" in property confiscated by the Cuban government. To decide the motion, the Court will need to determine whether a plaintiff has Article III standing to sue a third party for damages caused by a foreign government's confiscation of property, when that third party does not operate any commercial enterprise on the confiscated property. The Court will also need to determine the meaning of several statutory preconditions to a Title III suit. And if the Court does not resolve the motion on these or other threshold grounds, it will need to interpret the substantive elements of a Title III claim, including the scope of the mens rea requirement and the nature of the "lawful travel" exclusion from the definition of "traffic[king]" in Title III. These issues involve novel and controlling questions of law that must be resolved before the case can move forward, and whose resolution will materially advance the ultimate termination of the litigation. A hearing will enable the parties to sharpen the issues, clarify their positions, and address any unanswered questions, all of which will assist this Court in efficiently resolving the motion.

Defendant American Airlines, Inc. ("American") moved to dismiss Plaintiff's Complaint on December 23, 2019. Dkt. 25. This Court *sua sponte* dismissed the motion without prejudice and ordered jurisdictional discovery. Dkt. 26. After the close of jurisdictional discovery, Plaintiff filed an Amended Complaint ("Complaint" or "AC"). Dkt. 47. American hereby moves to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), (3), and (6), or, in the alternative, to transfer venue pursuant to 28 U.S.C. § 1404(a).

## INTRODUCTION

Plaintiff seeks to force American to pay him three times the value of certain beachfront property in Varadero, Cuba (the "Property"), that he allegedly inherited from his mother and aunt. Plaintiff alleges that the Cuban government—not American—confiscated the Property without compensation sometime after 1959. Plaintiff further alleges that after the confiscation, the Cuban government "worked with hotel chains"—not American—"to build, develop, and operate four beachfront resorts" on the Property (the "Subject Hotels"), again without paying Plaintiff or his family any compensation. AC ¶¶ 46. Nonetheless, despite American's complete lack of involvement in the confiscation of the Property, the construction of the Subject Hotels, or those hotels' operation, Plaintiff asserts that American is liable for "trafficking" in the Property under Title III of the Helms-Burton Act of 1996 ("HBA"), because an American-branded website—BookAAHotels.com—previously offered travelers the option of booking hotel rooms in Cuba, including at the Subject Hotels. AC ¶¶ 9–12, 167.

Plaintiff's claim fails. To begin with, it is barred by essential threshold requirements for suit. Plaintiff lacks Article III standing because his alleged injuries—the uncompensated confiscation of the Property and the subsequent operation of the Subject Hotels by unrelated third parties—cannot be fairly traced to American. This Court also lacks personal jurisdiction over American, both because there is no general jurisdiction over American in Florida, and because Plaintiff's claim did not arise out of any action American took in Florida. Among other things, discovery has shown that the BookAAHotels.com website was created and controlled entirely by a third party, a Dutch company called Booking.com B.V. ("Booking"). Thus, American not only had nothing to do with Cuba's confiscation of the Property and nothing to do with developing or operating hotels there, it also had nothing to do with choosing the specific hotels listed on the website—the alleged source of Plaintiff's putative injury. Venue in this forum is also improper, and less convenient than in other forums.

1

Plaintiff also fails to state a claim under the HBA. While the HBA provides a cause of action against persons who "traffic[]" in property confiscated by the Cuban government, 22 U.S.C. § 6082(a)(1)(A), Congress limited this cause of action in several significant ways. For example, to bring suit, a plaintiff must have "acquire[d] ownership" of a claim to confiscated property before March 12, 1996, the HBA's "date of enactment." *Id.* § 6082(a)(4)(B). Congress also added a heightened *mens rea* requirement, making defendants liable only for "knowingly and intentionally" trafficking in confiscated property. *Id.* § 6023(13)(A). And Congress further narrowed the cause of action by defining "traffics" to exclude any "uses of property incident to lawful travel to Cuba." *Id.* § 6023(13)(B)(iii).

Plaintiff's claim runs afoul of these limitations in the statute (and of others described in more detail below). Plaintiff admits that he acquired ownership of his alleged claim to the Property *after* March 12, 1996. AC ¶ 42. That defect alone supports swift dismissal of Plaintiff's Complaint. On the merits, Plaintiff fails to adequately allege that American intentionally trafficked in property it knew was confiscated. Plaintiff also fails to allege facts demonstrating that the booking services at issue were not incident to "lawful travel," as the statutory definition of "traffics" requires, 22 U.S.C. § 6023(13); and on the face of the Complaint, the booking services plainly were incident to such travel, as they were offered pursuant to a Treasury Department regulation that expressly authorizes carriers to offer "travel services" in connection with lawful flights to Cuba, 31 C.F.R. § 515.572(a)(1). For each of these reasons, this Court should dismiss Plaintiff's Complaint.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim requires factual allegations that establish all "the material elements of a cause of action." *AFL-CIO v. City of Miami*, 637 F.3d 1178, 1186 (11th Cir. 2011). "Threadbare recitals," "conclusory statements," and mere "legal conclusions" "do not suffice" and are not accepted as true. *Iqbal*, 556 U.S. at 678. The allegations must "raise a right to relief above the speculative level," meaning that they must render the claim not merely "conceivable," but "plausible." *Twombly*, 550 U.S. at 555, 570.

**ARGUMENT**

I. **PLAINTIFF'S CLAIM IS BARRED BY ESSENTIAL THRESHOLD REQUIREMENTS OF STANDING, PERSONAL JURISDICTION, AND VENUE.**

A. **Plaintiff Lacks Article III Standing.**

To plead Article III standing, a plaintiff "must 'clearly . . . allege facts demonstrating'" (1) an actual, concrete, and imminent "injury in fact" that is (2) "fairly traceable to the challenged conduct of the defendant" and (3) "likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547–48 (2016) (internal quotation marks omitted). The alleged injury must amount to "an invasion of a legally protected interest." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). And a plaintiff cannot assert an "injury that results from the independent action of some third party not before the court." *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976). Here, Plaintiff has not alleged an invasion of a legally protected interest or any injury fairly traceable to American.

To begin with, Article III is not satisfied by the fact that the HBA gives United States nationals a right to sue persons who traffic in confiscated property. "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997); *Spokeo*, 136 S. Ct. at 1547–48; *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009) ("[T]he requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute."). Plaintiff thus bears the burden of showing that he "otherwise" has Article III standing based on an actual injury in fact that is fairly traceable to American. But he has not done so.

Plaintiff primarily alleges that the Cuban government confiscated the Property without compensation. AC ¶¶ 4, 46. But any injury from the alleged confiscation is traceable only to the Cuban government. And Plaintiff has no standing to sue anyone else, including American, for "injury that results from the independent action of [Cuba]." *Simon*, 426 U.S. at 41–42.

Plaintiff also alleges that he has not received "any compensation" from the hotels that currently operate on the Property. AC ¶ 55. But this alleged injury too is insufficient to establish Article III standing to sue any entity other than Cuba—least of all American. As the Eleventh Circuit held in an earlier lawsuit Plaintiff filed seeking compensation for property allegedly confiscated by the Cuban government, the confiscation extinguished any private ownership interests Plaintiff or his family may have had in the property. *Glen v. Club Mediterranee, S.A.*, 450 F.3d 1251, 1255 (11th Cir. 2006) (rejecting Plaintiff's argument that "the expropriations

committed by the Cuban government failed to extinguish the ownership rights of those who owned the properties prior to the takings"); *accord Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 414–15 (1964) (determining that confiscation by Cuba "constituted an effective taking of the sugar, vesting in Cuba [the] property right in it"); *Havana Docks Corp. v. MSC Cruises SA Co.*, No. 19-cv-23588, 2020 WL 59637, at \*4 (S.D. Fla. Jan. 6, 2020) ("[T]he Cuban Government's confiscation extinguished Plaintiff's property rights.").

Former owners of confiscated property "may own a *claim* for compensation under U.S. law, but they do not *own* the expropriated [property] itself." *Glen v. Club Mediterranee, S.A.*, 365 F. Supp. 2d 1263, 1270 (S.D. Fla. 2005). As a result, Plaintiff has no standalone "legally protected interest" in ongoing activities on the Property. *Lujan*, 504 U.S. at 560. He cannot (for example) sue someone for trespassing on the premises (because he has no ownership interest in the property), *see Glen*, 365 F. Supp. 2d at 1270, and he cannot sue a hotel for negligently damaging the Property (because the hotel does not owe him a duty). Thus, any alleged injury to Plaintiff resulting from the loss of monetary benefits from ongoing activities on the Property—to the extent it exists at all—can only exist as a part of the injury resulting from Cuba's alleged confiscation, not as an independent injury. *See, e.g.*, Restatement (Second) of Torts § 927 & cmts. m, o (1979) (providing for recovery of loss-of-use damages against the tortfeasor); *see also McDermott v. Middle East Carpet Co.*, 811 F.2d 1422, 1427 (11th Cir. 1987) ("[L]ost profits must be directly traceable to the wrongful acts of the other party.").

Furthermore, even if Plaintiff's failure to receive compensation for commercial activity on the Property could be independently attributed to the Subject Hotels, it would still not be fairly traceable to American. American does not own, operate, or use the Property. And the lack of compensation that Plaintiff claims to have suffered is traceable (at most) to Cuba's and the hotels' retention of any revenue generated on the Property, not to American. Nor does Plaintiff allege any additional Article III injury that can be attributed to American. Plaintiff asserts only that an American-branded website "facilitat[ed] bookings at . . . hotels" on the Property by allowing travelers to book rooms at those hotels on the website. AC ¶ 11. But a mere hotel booking is not an "actual," "concrete," and "imminent" injury to Plaintiff for Article III purposes. *Lujan*, 504 U.S. at 560 (quotation marks omitted). The potential injury does not occur until a traveler who makes a reservation pays the hotel, the hotel receives a profit, and the hotel (or the Cuban government) fails to compensate Plaintiff out of that profit.

4

Thus, even assuming Plaintiff had a cognizable legal interest in ongoing activity at the Property—which he does not, *see Glen*, 450 F.3d at 1255—American's connection to the actual alleged trafficking at the Property would be far too attenuated to satisfy Article III. Plaintiff's real complaint is with the actions of Cuba and the hotels—"the independent action[s] of . . . third part[ies] not before the court," *Simon*, 426 U.S. at 42—not American.

## B.   This Court Lacks Personal Jurisdiction Over American.

Separately, the Complaint must be dismissed because this Court lacks both "general" and "specific" personal jurisdiction over American, and thus cannot assert jurisdiction consistent with the federal Due Process Clause. *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014). Now that jurisdictional discovery is complete, the Court need not take the allegations in the Complaint as true. Rather, it is "free to weigh the facts" as presented in "deposition testimony and affidavits." *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009) (subject-matter jurisdiction); *see Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) (personal jurisdiction). And, as discussed below, many of the jurisdictional allegations in the Complaint are contradicted by the facts.

*General personal jurisdiction.* "General" or "all-purpose" personal jurisdiction permits suits for conduct unrelated to the defendant's activities in the forum state. *Daimler*, 571 U.S. at 139. The Supreme Court has rejected the claim that general jurisdiction can be based merely on a defendant's "sizable" and "continuous activity" in a forum state. *Id.* In *Daimler*, for example, the plaintiffs argued that jurisdiction exists "in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business.'" 571 U.S. at 138. The Court rejected that assertion as "unacceptably grasping." *Id.* at 132, 139. Instead, it held that general jurisdiction is proper only where the defendant is "at home." *Id.* at 137. And because "only a limited set of affiliations with a forum will render a defendant" at home, a corporation is virtually never at home except in the states of its (1) incorporation and (2) "principal place of business." *Id.*

Applying this test, the Court held that Daimler was not at home in California, even though one of its subsidiaries had "multiple California-based facilities" and was "the largest supplier of luxury vehicles to the California market." *Id.* at 123. As the Court explained, "the general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts." *Id.* at 139 n.20 (alteration and quotation marks omitted). "General jurisdiction instead

5

calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them." *Id.*

Here, as Plaintiff himself alleges, American is incorporated in Delaware. AC ¶ 16. And this Court has repeatedly recognized that American has its principal place of business in Texas— which is Plaintiff's own state of residence—not Florida. *See, e.g.*, *Jakobot v. Am. Airlines, Inc.*, No. 10-61576-CIV, 2011 WL 2457915, at *1 (S.D. Fla. June 20, 2011); *Sequeira v. Am. Airlines, Inc.*, No. 09-22109-CIV, 2010 WL 11505678, at *1 (S.D. Fla. Apr. 15, 2010). Fifty-three of American's corporate executives are based in Texas, and it is from American's headquarters in Fort Worth that those executives direct American. Mohr Decl. ¶ 4 (Ex. A). Indeed, all high-level policies and decisions regarding American's Miami operations and American's operations in Cuba are made in Texas. Mohr Decl. ¶ 3. The only executive officer based in Florida reports directly to a supervisor in Fort Worth. Mohr Decl. ¶ 5; *see Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1318 (11th Cir. 2018) (rejecting general jurisdiction over a corporation in Florida because "Florida was not 'a surrogate' place of incorporation or principal place of business" and plaintiffs "d[id] not allege that [the company's] leadership was based in Florida or that [it] otherwise directed its operations from Florida" (quoting *Daimler*, 571 U.S. at 130 n.8)).

Plaintiff argues at length that American is "at home" in Florida because it "markets itself as 'Miami's hometown airline'" and has a sizable "hub" in Miami. AC ¶¶ 18, 56–99. But neither marketing phrases like "hometown company" nor allegations of sizable operations in Miami establish general jurisdiction, as these allegations are less probative of forum residence than the facts the Court rejected as "plainly" inadequate in *Daimler*, 571 U.S. at 139 n.19.

A full picture of American's nationwide activities further undercuts Plaintiff's allegations. American has ten "hub" airports in the United States. Jasevicius Dep. 11:10–12 (Ex. B). American also advertises itself as the "hometown airline" for its hubs in both North Carolina and Pennsylvania. Mohr Dep. 14:5–11 (Ex. C). And American currently has "large numbers of employees and [a] large number of operations" in at least "Texas, North Carolina, Florida, Illinois and Pennsylvania." Mohr Dep. 39:21–22, 41:24–25. Under Plaintiff's theory, American would be "at home" and subject to general jurisdiction in at least those five states, if not in all ten hub locations. That cannot be correct. A "corporation that operates in many places can scarcely be deemed at home in all of them." *Daimler*, 571 U.S. 139 n.20.

*Specific personal jurisdiction.* Specific jurisdiction is proper only if "the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal citation and quotation marks omitted); *see Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017). Plaintiff has not established the elements of this test. For one thing, while the Complaint focuses on American's hub in Miami and its flights from Miami to Cuba, AC ¶¶ 56–99, Plaintiff's suit does not arise out of those operations. The sole basis for Plaintiff's claim is the alleged trafficking in Cuban hotel properties through a website, BookAAHotels.com. AC ¶¶ 167–68. All the American employees who manage American's relationship with Booking.com and the BookAAHotels.com website work in Texas, not Florida. Markwood Decl. ¶ 2 (Ex. D). And, of course, American's Miami flight operations are distinct from the operation of the website. Indeed, a customer can book a hotel without purchasing a flight on American, and can take an American flight without booking a hotel. *See* Markwood Dep. 17:17–18:10, 41:7–13 (Ex. E).

Moreover, Plaintiff's suit arises out of the actions of a third party, namely Booking. The BookAAHotels.com website is created and controlled by Booking. Markwood Dep. 14:2–15:7. American merely places a link to BookAAHotels.com at various places on American's websites and in emails. Markwood Dep. 40:23–25 (describing one of these links as "a space that we provide giving control to a third party"). Crucially, Booking has control over which hotels at a given destination are presented to customers. Markwood Dep. 160:9–12; 161:12–15; *id.* 42:16–17 ("Booking controls what is inside, the inventory inside."). Booking conducts all transactions based on the hotels it selects—including the allegedly infringing reservations at the Subject Hotels. Markwood Dep. 15:6 ("It's their platform, it is their in-house tool."); *id.* 24:20–22 (Customers "engage in a commercial transaction" "with Booking.com"). Jurisdiction cannot be based on these kinds of independent actions by a third party. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("Such unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction.").

The Complaint makes several inaccurate allegations that misleadingly overstate American's involvement in the hotels website. It incorrectly asserts that customers can book Cuban hotels on the "American Airlines website," rather than on the BookAAHotels.com

website. AC ¶ 8. It wrongly claims that American "operates," "controls," and "provide[s]" booking services" through BookAAHotels.com; and that American "pre-populated," "listed," and "featured" the specific hotels and information displayed on BookAAHotels.com. AC ¶¶ 9, 103–05, 123, 124, 126, 142–43. In truth, as Plaintiff is aware from discovery, hotel bookings occur through BookAAHotels.com, not AA.com (American's primary website through which flights are booked), and Booking unilaterally controls all the referenced aspects of BookAAHotels.com, including its content. The Complaint also alleges that BookAAHotels.com uses the "same color scheme" and "format" as the "American Airlines homepage." AC ¶¶ 109, 115. But in reality, the format used on Book AA Hotels.com was designed by Booking and is based on Booking.com's website. Markwood Decl. ¶ 3. Finally, the Complaint states that American's customers could earn "up to 10,000 AAdvantage miles per night booked on Book AA Hotels," and could earn "1,000 bonus miles" by bundling a flight with a hotel. AC ¶¶ 111, 137. But as Plaintiff knows, this is irrelevant because those promotions were never offered for flights to Cuba or hotels in Cuba. Markwood Decl.¶ 4.

Regardless, jurisdiction would be lacking even if Booking's actions could be imputed to American. Operating a generally-available hotel booking website does not establish personal jurisdiction in every state in which a resident makes a reservation. *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1223 (11th Cir. 2009); *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 143 (4th Cir. 2020); *Desert Rock Entm't II LLC v. D. Hotel & Suites, Inc.*, No. 15-cv-01417, 2016 WL 1732724, at *3 (D. Nev. May 2, 2016) (booking "website does not create contacts with Nevada in a substantial way to support a finding that Hotel's actions were expressly aimed at Nevada"). In *Oldfield*, for example, a Florida resident used a Costa Rican resort's website to book a reservation. He was injured while staying at the resort, and then sued the Costa Rican resort in Florida. 558 F.3d at 1214. The Eleventh Circuit held that the operation of a booking website was insufficient to establish personal jurisdiction in Florida, when the injury occurred in Costa Rica. *Id.* at 1223. Similarly, in *Fidrych*, a South Carolina plaintiff used a Marriott website to view a "Marriott-affiliated hotel in Milan, Italy." 952 F.3d at 128–29. He then sued Marriott in South Carolina for a personal injury suffered at the hotel. The court held that "the level of interactivity of a website like Marriott's is not enough, on its own, to make the website a sufficient basis to support the exercise of specific jurisdiction." *Id.* at 142. "If we were to conclude otherwise," the court continued, "then every hotel operator would be subject to

personal jurisdiction in the state of residence of every guest who used the hotel's website to make the reservation." *Id.* at 143 n.6.

So too here. The Complaint repeatedly states that BookAAHotels.com is accessible to all American's customers, "including those in Florida." *E.g.*, AC ¶¶ 102, 108, 111, 114, 118–19, 123, 128, 130–31, 134. But the global availability of a website does not differentiate between Florida and any other forum. American no more "purposefully directed" its website to Florida than to anywhere else. *Burger King*, 471 U.S. at 472. If Plaintiff's allegations sufficed, American "would be subject to personal jurisdiction in the state of residence of every guest who used the hotel's website to make the reservation." *Fidrych*, 952 F.3d at 143 n.6. In sum, not only are the hotels displayed on BookAAHotels.com controlled by a third party—Booking—but the booking application is insufficient to establish personal jurisdiction in Florida anyway.

**C.    Venue Is Both Improper In This District And More Convenient Elsewhere.**

For largely the same reasons that this Court lacks personal jurisdiction over American, venue in the Southern District of Florida is improper. The Complaint asserts that venue is appropriate under 28 U.S.C. § 1391(b)(1) ("a judicial district in which any defendant resides") and 28 U.S.C. § 1391(b)(2) ("a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred"). AC ¶ 20. But neither provision applies.

As to Section 1391(b)(1), a defendant corporation is deemed to reside for venue purposes in "any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). Because this Court lacks personal jurisdiction over American in this case, American cannot be deemed to reside in the Southern District of Florida for venue purposes. Section 1391(b)(1) is therefore inapplicable.

As to Section 1391(b)(2), the Complaint alleges that "American Airlines['] trafficking in Glen's property . . . occurred within this District." AC ¶ 20. But, as American has explained, American's flights from Miami did not give rise to the alleged trafficking, American had no control over which hotels Booking.com displayed on the web application, and the American employees who interact with Booking.com do not work in this District. Thus, none of the relevant "events or omissions" giving rise to the alleged trafficking—much less "a substantial part" thereof—occurred in the Southern District of Florida. § 1391(b)(2). Venue is therefore improper in this jurisdiction.

In the alternative, should this Court decline to dismiss the Complaint, it should transfer this action to the Northern District of Texas. The Court may transfer a civil action "to any other district or division where it might have been brought," "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). This action could have been brought in the Northern District of Texas because American has its principal place of business in that District. *See* Section I.B. *supra*; *see also* Mohr Decl. ¶ 2. The Northern District would be convenient not only for American but also for Plaintiff, who resides nearby in Plano, Texas. *See* AC ¶ 15. Furthermore, to the extent there are relevant witnesses, documents, or data in the United States, they are more likely located in Texas, where American is headquartered and Plaintiff resides. Mohr Decl. ¶ 2; AC ¶ 15. And Plaintiff's choice of forum is entitled to little, if any, weight because no party is based in Florida and no operative fact occurred here. *See Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005) (listing Section 1404(a) transfer factors); *see also Osgood v. Discount Auto Parts, LLC*, 981 F. Supp. 2d 1259, 1267 (S.D. Fla. 2013). Therefore, even if venue were proper in this District, the Court should transfer this case to the Northern District for the convenience of the parties and in the interest of justice.[1]

## II.   PLAINTIFF DOES NOT SATISFY TITLE III'S PRECONDITIONS TO SUIT.

Plaintiff has also failed to satisfy four preconditions to an HBA suit: (1) the plaintiff must have acquired the alleged claim to confiscated property before March 12, 1996 (the HBA's date of enactment); (2) the confiscated property must fit within the HBA's definition of "property"; (3) the property must have been confiscated from a U.S. national; and (4) at minimum, the person holding a claim to the property on March 12, 1996, must have been a U.S. national.

***First***, the HBA provides that, "[i]n the case of property confiscated before March 12, 1996, a United States national may not bring an action under this section on a claim to the confiscated property unless such national *acquires ownership* of the claim *before* March 12, 1996." 22 U.S.C. § 6082(a)(4)(B) (emphasis added). Because Plaintiff alleges that the Cuban government confiscated the Property before March 12, 1996, this requirement applies here. AC

---

[1] In the alternative, the Court could transfer this case to the District of Delaware because American is incorporated in Delaware and subject to jurisdiction there, AC ¶ 16; and because Plaintiff has filed a related suit in the District of Delaware, naming multiple defendants, that alleges trafficking under the HBA at the same resorts at issue in this case based on the defendants' provision of online hotel booking services. *See Glen v. TripAdvisor LLC, et al.*, No. 1:19-cv-01809 (D. Del. filed Dec. 9, 2019) (complaint attached as Ex. F).

¶¶ 40–44. But Plaintiff does not satisfy it. He alleges only that he acquired ownership of a claim by inheritance *after* 1996, when his mother and aunt "died in 1999 and 2011, respectively." AC ¶ 42. Resolution of this issue is quick and dispositive: Plaintiff's suit is barred.

The mere possibility of a future inheritance is not enough to "acquire[] ownership" of a claim. Under settled principles of property law, before property ownership vests through an inheritance, a potential heir possesses (at most) a *hope* of an inheritance. "No one is an heir to a living person, and the prospective interest of an expectant heir is a mere possibility or hope, giving him or her no interest in property he or she may subsequently inherit." 26B C.J.S. Descent and Distribution § 75 (2020); Restatement (Second) of Trusts § 86 cmt. a (1959) (same); Restatement (Third) of Property: Wills and Other Donative Transfers § 2.1 cmt. d (1999) (same); Bogert, The Law of Trusts and Trustees § 113 (2019) (same); *see also Garcia-Celestino v. Ruiz Harvesting, Inc.*, 843 F.3d 1276, 1291 (11th Cir. 2016) ("[A]ny statutory term with established meaning under the common law is to be construed in a manner consistent with that common law meaning unless the statute says otherwise.").

**Second**, even if Plaintiff had acquired a claim to the Property before March 12, 1996, he has not established that the Property is the proper subject of a Title III action. The HBA's definition of property excludes "property used for residential purposes," with two exceptions not relevant here. § 6023(12). Plaintiff states that his family built a "one-room limestone cottage" on the Property and does not allege that the Property was used for non-residential purposes at the time of confiscation. AC ¶ 36; *see also* Original Complaint, Dkt. No. 1, ¶ 28 ("Glen's family built a small home on the Glen Properties").

**Third**, although Congress provided general definitions of "property" and "confiscated" for purposes of the HBA, *see* § 6023(4), (12), it also repeatedly emphasized that the HBA only covers property confiscated from United States nationals. *See* § 6022(3) (to provide for national security in the face of "theft of property from United States nationals"); § 6022(6) ("to protect United States nationals against confiscatory takings"); § 6081(2) ("[t]he wrongful confiscation or taking of property belonging to United States nationals"); § 6081(5) ("property and assets some of which were confiscated from United States nationals"); § 6081(6)(B) ("to protect the claims of United States nationals who had property wrongfully confiscated"). Indeed, Congress's final finding in Title III states that, "[t]o deter trafficking in wrongfully confiscated property, United States nationals who were the victims of these confiscations should be endowed with a judicial

11

remedy in the courts of the United States." § 6081(11). Title III is therefore entitled "Protection of Property Rights of United States Nationals." Given this textual evidence, it is unsurprising that, in Plaintiff's previous lawsuit, the Eleventh Circuit stated that because the property at issue there "was owned by Cuban nationals at the time of its expropriation," it "thus may not be the proper subject of a trafficking claim under [Title III]." *Glen*, 450 F.3d at 1255 n.3.

The Complaint never alleges that the Property was confiscated from U.S. nationals. To the contrary, it appears that Plaintiff's family members—who lived by, developed, and built a home on the Property—were all Cuban nationals. *See* AC ¶¶ 28–29, 34, 41–42.

**Fourth**, at minimum, property confiscated before enactment of the HBA must have been held by persons who were U.S. nationals by March 12, 1996, when the HBA was enacted, in order to be properly subject to the Act. Judge Scola recently dismissed an HBA claim on this ground. *Gonzalez v. Amazon.com, Inc.*, No. 19-cv-23988, 2020 WL 1169125, at *2 (S.D. Fla. Mar. 11, 2020). As the court explained, "a United States citizen must already own the claim to the confiscated property on March 12, 1996 when the Act was passed." *Id.* (citing § 6082(a)(4)(B)). "Congress intended that this requirement prevent foreigners from relocating to the United States for the purpose of using this remedy." *Id.* (internal quotation marks and alteration omitted). The Complaint, however, never alleges that the Property was confiscated from persons who became U.S. nationals before March 12, 1996. Plaintiff does not allege that either his mother or aunt were or ever became U.S. nationals. AC ¶¶ 41–42.

The Complaint must be dismissed because it fails to meet *any* of these four independent preconditions to suit.

## III.   PLAINTIFF DOES NOT ADEQUATELY PLEAD THE MENS REA AND TRAFFICKING ELEMENTS OF HIS CLAIM.

Plaintiff also fails to state a claim on the merits. First, he does not adequately allege that American "knowingly and intentionally" used or benefitted from confiscated property. Second, he fails to plausibly allege that American's conduct is not "incident to lawful travel to Cuba," as required to state a trafficking claim under the HBA.

### A.   Plaintiff Fails To Plead That American Knowingly And Intentionally Used Or Benefitted from Confiscated Property.

Plaintiff fails to plead that American "*knowingly and intentionally . . .* engage[d] in a commercial activity using or otherwise benefitting from confiscated property." 22 U.S.C. § 6023(13) (emphasis added). As Judge Scola recently confirmed, to adequately plead this

12

required mental state, a plaintiff must allege that the defendant intended to use property even though it "knew the property was confiscated by the Cuban government [and] that it was owned by a United States Citizen." *Gonzalez*, 2020 WL 1169125, at *2.

Judge Scola's reading follows directly from the statute's text. The relevant provision combines "confiscated" and "property" into a single phrase, and places "confiscated" before "property," closer to "knowingly and intentionally." In this context, "knowingly and intentionally" cannot fairly be read to modify "property" without also modifying "confiscated." *See Cyan, Inc. v. Beaver Cty. Emps. Ret. Fund*, 138 S. Ct. 1061, 1077 (2018) (modifier applies to entire clause if the "clause hangs together as a unified whole"); *Goldberg v. Companion Life Ins. Co.*, 910 F. Supp. 2d 1350, 1354 (M.D. Fla. 2012) (a word is presumed to modify "the nearest and most proximate and reasonable referent").

Further, Congress's use of "knowingly and intentionally"—a phrase commonly used in criminal statutes—suggests that Congress wanted to ensure that liability would not be imposed unless the defendant engaged in some form of "culpable" conduct. *See, e.g.*, 18 U.S.C. § 2284(a) ("knowingly and intentionally transports any terrorist"); 10 U.S.C. § 950t(26) ("knowingly and intentionally aids an enemy of the United States"). It also makes sense for Congress to have distinguished between (nonculpable) persons who use property they do not know is confiscated, and (culpable) persons who intentionally use property they know the Cuban government confiscated from a U.S. citizen. The contrary reading would make little sense: if "knowingly and intentionally" applied only to the act of using the property (and not to whether it was confiscated), the statute would distinguish between persons who knowingly use property, and those who somehow use property without realizing they were doing so. *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 69 (1994) (using similar reasoning to conclude that "knowingly" applied to the contents of a mailed package, not just the act of mailing it).

The Complaint fails to satisfy this mens rea requirement for two reasons. *First*, it impermissibly excises "intentionally" from the statute by failing even to acknowledge that an HBA claim requires proof of intentional conduct. *See* AC ¶ 6 (incorrectly referring only to "knowing[]" conduct). *Second*, while the Complaint asserts that American "knowingly" traffics in the Property, AC ¶¶ 167–68, it does not allege that American "knew the property was confiscated by the Cuban government nor that it was owned by a United States citizen," *Gonzalez*, 2020 WL 1169125, at *2. Moreover, the Complaint contains no facts supporting a

plausible inference that American knew that BookAAHotels.com displayed hotels that were built on property the Cuban government confiscated fifty years ago—let alone from a U.S. citizen. It therefore fails to state a plausible claim for relief. *Twombly*, 550 U.S. at 570.

**B.     Plaintiff Fails To Plead That American's Booking Service Is Not Incident To Lawful Travel.**

**1.     Plaintiff Does Not Allege That American's Booking Service Is Not A Travel Service "Incident To Lawful Travel," And It Plainly Is.**

To plead "trafficking" under Title III, a plaintiff must allege facts to plausibly demonstrate that a defendant's "us[e]" of the confiscated property fits within Congress's definition of "traffics." That definition excludes "uses of property incident to lawful travel to Cuba, to the extent that such . . . uses of property are necessary to the conduct of such travel." 22 U.S.C. § 6023(13)(B). Plaintiff, however, offers only a conclusory allegation, paraphrasing the HBA's language, that the BookAAHotels.com booking service was not "incident to lawful travel to Cuba." AC ¶ 171. Such allegations are insufficient under *Twombly*, 550 U.S. at 570.

Plaintiff's failure to plead these facts is particularly conspicuous because facilitating hotel bookings in connection with trips to Cuba plainly *is* "incident to lawful travel to Cuba" and "necessary to the conduct of such travel." 22 U.S.C. § 6023(13)(B). For more than 40 years, the United States government has permitted lawful travel to Cuba under the Cuban Asset Control regulations ("CACR") administered by the U.S. Department of Treasury's Office of Foreign Assets Control ("OFAC"). OFAC promulgated these regulations under statutory authority to establish the scope of lawful trade with Cuba. *See* 22 U.S.C. § 2370(a); 50 U.S.C. § 4305(b).

Three regulatory provisions are most relevant here. First, a personal-travel provision authorizes persons to travel to Cuba for certain enumerated purposes. 31 C.F.R. § 515.560. Second, a carrier-services provision authorizes persons to "provide carrier services to, from, or within Cuba in connection with travel or transportation, directly or indirectly, between the United States and Cuba of persons, baggage, or cargo." *Id.* § 515.572(a)(2)(i). Third, a travel-services provision authorizes "[p]ersons subject to U.S. jurisdiction . . . to provide travel services in connection with travel-related transactions involving Cuba." *Id.* § 515.572(a)(1). Like countless individual travelers and numerous travel providers, American relies on these regulations to provide lawful carrier services and facilitate travel services to Cuba.

The basis for Plaintiff's suit is that American allegedly facilitates hotel booking services through a website for customers who might also be seeking to purchase flights to Cuba. AC

14

¶¶ 9–13. But such booking services are, on their face, "travel services in connection with travel-related transactions involving Cuba" authorized under the OFAC regulations described above, since the plain language of "travel services" encompasses facilitating hotel bookings. *See City of Rome v. Hotels.com, L.P.*, 549 F. App'x 896, 899 (11th Cir. 2013) (discussing "online travel companies that offer online travel services that help consumers, among other things, book hotel reservations"). And because American's alleged facilitation of booking services is lawful—indeed directly authorized—under the OFAC regulation, it is "incident" and "necessary" to "lawful travel to Cuba" under the HBA. Such facilitation therefore does not constitute "trafficking" within the meaning of that statute. Put differently, OFAC has licensed certain travel to Cuba and has also licensed the provision of services (including facilitating hotel bookings) tied to that travel. American's alleged facilitation of booking services for passengers traveling to Cuba is thus licensed under OFAC regulations precisely *because* it is incident and necessary to lawful travel. Plaintiff's failure to plausibly allege otherwise is fatal to his Complaint.

### 2.      Lawful Travel Is Not An Affirmative Defense.

Plaintiff cannot salvage his lawsuit by arguing that lawful travel is an exemption from liability under the HBA, and therefore an affirmative defense that he need not negate in his Complaint. The default rule is that plaintiffs must plead and prove "the essential aspects of their claims." *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 57 (2005).

Here, two key features of the HBA compel the conclusion that Plaintiff must plead facts showing the absence of lawful travel as part of his affirmative case, because this is an "essential aspect" of his HBA claim. ***First***, "traffics" is a material element of the Title III cause of action: a plaintiff must plead and prove that the defendant "traffics in property which was confiscated by the Cuban government." 22 U.S.C. § 6082(a)(1). The Title III cause of action itself says nothing about exclusions from the scope of "traffics." It is only elsewhere, in the separate definitions section, that Congress defined "traffics" to include certain conduct and exclude other conduct like "lawful travel." § 6023(13). This reveals that Congress intended to require plaintiffs to plead that the defendant's conduct fits within the defined meaning of "traffics" as a whole, as set forth in the separate definitional provision.

Consistent with this conclusion, the Eleventh Circuit has held that where, as here, an element is a "straightforward" part of an offense, the burden of pleading and proving that element rests with the plaintiff, even if doing so requires the plaintiff to negate applicable

15

statutory carve-outs. *Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King, & Stevens, P.A.*, 525 F.3d 1107, 1111 (11th Cir. 2008). In *Thomas*, the court analyzed the Driver Privacy Protection Act ("DPPA"), which sets forth three elements of a cause of action for misusing personal information contained in state motor vehicle records. *See id.* One element is that the defendant's alleged conduct was "not permitted" by a separate provision of the statute that generally prohibits disclosure of such information but enumerates fourteen exceptions. *Id.*; *see also* 18 U.S.C. § 2721. The court concluded that the plaintiff bore the affirmative burden of proving that a defendant's conduct was "not permitted" by this separate provision, because that showing was a "straightforward" part of the statutory offense. 525 F.3d at 1111. So too here: the "traffics" element is a straightforward part of a Title III claim that must be pleaded and proved by the plaintiff, even if it refers to a separate section that lists prohibited conduct and carves out some permitted activities.

Moreover, the "lawful travel" exception to "traffics" closely tracks other exclusions that are "so incorporated with the language defining the offence that the ingredients of the offence cannot be accurately and clearly described if the exception is omitted." *United States v. Prentiss*, 256 F.3d 971, 979 (10th Cir. 2001) (en banc) (per curiam) (quoting *United States v. Cook*, 84 U.S. 168, 173–74 (1872)) (emphasis omitted), *overruled on other grounds by United States v. Cotton*, 535 U.S. 625 (2002); *see also Pioneer Centres Holding Co. Emp. Stock Ownership Plan & Tr. v. Alerus Fin., N.A.*, 858 F.3d 1324, 1336 (10th Cir. 2017). *Prentiss*, for example, analyzed a federal statute that created federal criminal liability for arson and other crimes committed in "Indian country," but provided an exception for crimes committed by "one Indian against . . . another." 256 F.3d at 974. Even though "the exception [was] set forth in a subsequent . . . section of the statute," the court concluded that "the Indian/non-Indian statuses of the victim and the defendant are essential elements of the crime of arson in Indian country," and thus had to be part of the government's affirmative case. *Id.* at 979–80; *see also United States v. Vuitch*, 402 U.S. 62, 71 (1971) (for abortion offense, prosecution must negate exception for procedures "necessary for the preservation of the mother's life or health"). Similarly here, the concept of "traffics" cannot be accurately described if the statutory carve-outs, including for lawful travel, are omitted. The "lawful travel" carve-out is an integral part of the definition of "traffics" itself.

**Second**, Title III must be interpreted in light of, and reconciled with, the broader statutory framework governing trade with Cuba, through which Congress has authorized travel and the

provision of travel services to Cuba. Shifting the burden to defendants to plead lawful travel would upend this longstanding framework, creating needless conflict between the HBA and other statutes authorizing the President to permit lawful travel to Cuba. There is no indication that Congress intended such a result. Indeed, *avoiding* that possibility is the logical reason why Congress decided to "remove any liability" for "lawful travel" by carving it out from the definition of "traffics" in the HBA. H.R. Rep. No. 104-468, at 44 (1996).

OFAC has regulated Cuban trade and travel under the CACR for decades pursuant to congressional authority delegated by statute. *Regan v. Wald*, 468 U.S. 222, 226 & n.2 (1984); *see* 31 C.F.R. pt. 515. The current regulations authorize travel to Cuba for 12 enumerated purposes, as well as carrier services and travel services in connection with such travel. 31 C.F.R. §§ 515.560, 515.572(a)(1)-(2). These regulations establish the lawfulness of providing "travel services" in connection with travel between the United States and Cuba. Countless travelers and travel providers have relied on these regulations to arrange and engage in lawful travel.

It would have been senseless for Congress to authorize travel to Cuba and the provision of related travel services for family visits and educational, religious, and humanitarian purposes (among others), but at the same time permit plaintiffs to sue for damages based on that very same conduct. By the same token, it would have made no sense for Congress to allow HBA plaintiffs to drag defendants into court, subject them to onerous discovery, and force them to prove that they were providing lawful travel services, while at the same time authorizing the President to permit lawful travel and related services, and allowing the public and travel service providers to rely on regulatory designations of lawfulness. Indeed, if Congress had truly intended to shift the burden to travel service providers, one would have expected a clear statement to this effect in the HBA. *See Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 63 (2004).

In interpreting a statute, courts should "harmoniz[e]" it with related statutory schemes. *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 665 (2007); *People for the Ethical Treatment of Animals, Inc. v. Miami Seaquarium*, 189 F. Supp. 3d 1327, 1351 (S.D. Fla. 2016). The way to harmonize the HBA with the preexisting statutory scheme is to recognize that Congress intended to preserve lawful travel to Cuba and "transactions" related to such travel, and therefore carved them out of the HBA altogether. That interpretation rightly places on plaintiffs the burden to plead specific facts, and ultimately to prove, that a defendant's activity did not entail lawful travel services, and thus provides a potential basis for liability.

### 3.    *Garcia-Bengochea* **And** *Havana Docks* **Were Wrongly Decided.**

Two courts in this District have mistakenly concluded that the HBA's lawful-travel provision is an affirmative defense that a plaintiff can ignore in a complaint. *See Garcia-Bengochea v. Carnival Corp.*, No. 1:19-cv-21725, 2019 WL 4015576 (S.D. Fla. Aug. 26, 2019); *Havana Docks Corp. v. Carnival Corp.*, No. 1:19-cv-21724 (S.D. Fla. Aug. 28, 2019) (Dkt. 47). But neither court even discussed the statutory context within which the HBA was enacted—let alone confronted the fact that holding lawful travel to be an affirmative defense would undermine other parts of the statutory framework governing interactions with Cuba.

Those courts' analysis of the HBA's text was also flawed. Both courts relied heavily on the fact that the HBA's definition of "traffics" is divided into two paragraphs, the first of which states that, "except as provided" in the second, certain conduct shall constitute trafficking, and the second of which lists certain excluded conduct. *See Garcia-Bengochea*, 2019 WL 4015576, at *3; *Havana Docks*, Dkt. 47 at 4. But as explained earlier, there is no basis to infer that Congress intended the full definition of "traffics" – including its treatment of "lawful travel" – to be anything other than an element of a plaintiff's affirmative case. Moreover, the DPPA—which *Thomas* concluded did *not* create an affirmative defense—contains the *very same phrase* and is structured identically to the HBA in this respect. *See* 18 U.S.C. § 2721(a) (prohibiting disclosure of personal information "except as provided in subsection (b)").[2]

The courts also suggested that lawful trafficking is an affirmative defense because it requires proof of new facts. But the Eleventh Circuit rejected that argument in *Thomas*. The facts establishing that a defendant had not used personal information for a permissible purpose listed in the DPPA were not "so peculiarly within the knowledge of the defendant as to cause a shifting

---

[2] The two courts distinguish *Thomas* by reasoning that the DPPA only describes "lawful conduct that must be negated by the plaintiff to state a claim," while the HBA "frames the travel provision as an exception to otherwise unlawful conduct." *Garcia-Bengochea*, 2019 WL 4015576, at *3; *Havana Docks*, Dkt. 47 at 6–7. In fact, however, the DPPA contains a broad prohibition on disclosure of personal information, followed by a section enumerating permissible uses, and a separate liability provision that references "permissible uses." 18 U.S.C. §§ 2721(a)–(b), 2724. The HBA, similarly, contains a definitional provision setting forth particular uses of confiscated property that constitute trafficking, followed by a section enumerating certain uses that do not constitute trafficking, and a separate liability provision that references "trafficking." The HBA and the DPPA share the same structure, and *Thomas* is fully on point.

of the burden of proof." 525 F.3d at 1113. The same applies here. A plaintiff need only read the OFAC regulations to learn that they authorize the provision of "travel services" for Cuba.[3]

        **4.**      **The Face Of The Complaint Shows That The Actions Plaintiff Challenges Were Incident To Lawful Travel.**

Finally, even if lawful travel were an affirmative defense, "a claim that is facially subject to an affirmative defense . . . may be dismissed under Rule 12(b)(6)" if the defense is apparent from the facts alleged, coupled with the governing law. *LeFrere v. Quezada*, 582 F.3d 1260, 1263 (11th Cir. 2009) (reaching qualified-immunity defense on motion to dismiss).

Here, it is plain on the face of the Complaint that the "lawful travel" provision bars Plaintiff's claim. His claim is that American allegedly provides a service that allows travelers to book hotel accommodations in Cuba. AC ¶¶ 9–13. For the reasons discussed earlier, *see* Section III.B.1, *supra*, such a service is authorized by the CACR and therefore lawful. *See* 31 C.F.R. §§ 515.572(a)(1)-(2); *see also* 44 U.S.C. § 1507 ("[t]he contents of the Federal Register"—which includes administrative regulations—"shall be judicially noticed"). Plaintiff cannot plausibly claim otherwise.

## CONCLUSION

For the foregoing reasons, the Court should grant the motion to dismiss or, in the alternative, the motion to transfer venue.

---

[3] In *Gonzalez*, one defendant argued that importation of Cuban charcoal could not constitute "trafficking" under the HBA because such importation was authorized by applicable federal regulations, and Judge Scola concluded that this argument was an affirmative defense. *Gonzalez*, 2020 WL 1169125, at *2. But even assuming that this conclusion was correct, it is inapposite here, because lawful importation of itemized goods—unlike provisions of lawful travel services—is not one of the four carve-outs from the definition of "traffics" in Section 6023(13)(B).

Dated: March 27, 2020

Respectfully submitted,

*/s/ Ricardo H. Puente*
Ricardo H. Puente
(Florida Bar No. 121533)
Email:  rpuente@jonesday.com
Christopher R.J. Pace
(Florida Bar No. 721166)
Email:  crjpace@jonesday.com
**JONES DAY**
600 Brickell Avenue
Suite 3300
Miami, Florida  33131
Telephone: (305) 714-9700
Facsimile: (305) 714-9799

Karl Remón Thompson
(D.C. Bar No. 489583*)
Email: kthompson@jonesday.com
**JONES DAY**
51 Louisiana Avenue, NW
Washington, DC 20001
Telephone: (202) 879-3939
Fascimile: (202) 626-1700
*Admitted *pro hac vice*

***Attorneys for Defendant,***
***American Airlines, Inc.***

## **CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule 7.1(a)(3), I hereby certify that on March 26, 2020, I conferred telephonically and through e-mail with Ryan Goldstein, counsel for Plaintiff, in a good faith effort to resolve the issue regarding the transfer of venue raised in this motion.  Mr. Goldstein stated that Plaintiff opposes the relief requested herein.

*/s/ Ricardo H. Puente*
Ricardo H. Puente

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 27, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Ricardo H. Puente*
Ricardo H. Puente